LOGUE, J.
Carlos Jennings appeals his conviction of attempted trafficking in cocaine. He raises two issues on appeal: (1) the State failed to prove he was in constructive possession of cocaine; and (2) the trial court abused its discretion when it issued a curative instruction, rather than granting a mistrial, after the prosecutor made improper remarks in closing argument. We are not persuaded by these arguments and affirm.
FACTS AND PROCEDURAL BACKGROUND
On September 20, 2010, an off-duty police officer conducted a traffic stop of a four-door Toyota Camry that had three occupants. Before the officer could exit his vehicle, Jennings, the driver, jumped from his rental car and walked to the officer’s vehicle with his driver’s license in hand. Jennings was “very, very nervous.” As the officer conversed with Jennings, the backseat passenger attempted to flee but was stopped by another officer who had responded to the scene. The officer who had effectuated the traffic stop escorted Jennings back to the car to retrieve the car’s registration. The front seat passenger then tried to flee, but was apprehended.
Through the open door on the passenger’s side, the officer observed a large gym bag lying open on the front passenger seat floorboard. Plainly visible within the unzipped bag was a large amount of cash that was stacked and bundled. The money exceeded thirty-thousand dollars. Also in full view within the open gym bag was a square package that appeared to the officer to contain cocaine. Among other things, under its cellophane wrapping, there was white, powdery residue visible “all over the package.” The officer found a second package in the gym bag. Each package contained over one kilogram of cocaine. The packages were dusted for fingerprints and swabbed for DNA. No fingerprints were found on the packages and the DNA test results were not obtained in time for trial.
During the traffic stop, the officer had kept close watch on the passengers in the car based on a concern for his safety. As soon as Jennings exited the car, the officer explained, he felt he might be confronted with a “flight or fight” situation by all of the passengers. He was ready to draw his weapon if he had observed the front seat passenger moving in the direction of the floorboard. According to his observations, the backseat passenger never tossed anything into the front seat and the front seat passenger did not engage in any movements in the direction of the floorboard.
Jennings was charged by information with trafficking in cocaine on October 13, 2010. He filed a notice of expiration of speedy trial time on March 22, 2011.[1] The case was then set for trial on March 28, 2011.
At trial, the State did not present any DNA evidence. Defense counsel drew attention to this fact during the cross-examination of the arresting officer. When the officer testified that the laboratory testing had not been completed at the time of trial, defense counsel commented: “That is unbelievable.” His questions insinuated that the officer knew the results could exonerate Jennings.
*261 At the close of the State’s case, defense counsel moved for a judgment of acquittal, arguing the State failed to prove Jennings was in constructive possession of cocaine. The trial court deniéd the motion.
At one point in the State’s initial closing argument, the prosecutor addressed the absence of the DNA results. The State explained that no one knew the outcome of the DNA tests because, as the officer testified, the laboratory testing had not been completed. The State also downplayed the significance of DNA evidence in this case, contending Jennings’ DNA on the cocaine packages “would prove nothing” because skin particles and hair follicles of any of the three occupants could easily circulate in the car and land on the packages.
Defense counsel in his closing reviewed the various types of forensic evidence that were not presented at trial, including fingerprints and DNA. Regarding the lack of DNA evidence, defense counsel briefly discussed the arresting officer’s testimony that the laboratory testing had not been completed at the time of trial. The officer’s explanation, the defense argued, was “stupid,” “poppycock,” and “a lie.” The thrust of this part of the defense’s argument was to encourage the jurors to speculate that the State was lying about the DNA because the test results could exonerate Jennings. The trial court denied the State’s request for a curative instruction.
At one point on rebuttal, the State made the comments that have become an issue in this appeal. In response to the defense’s contentions regarding the absence of DNA evidence, the prosecutor pointed out that it can take over a year to obtain DNA test results, as the officer had testified. Not content to stop there, the prosecutor argued that the defense, if anyone, was at fault for the lack of DNA evidence. After all, the State argued, Jennings exercised his right to a speedy trial before the laboratory results that “could possibly implicate him” were ready.
Defense counsel objected, requested a curative instruction, but then moved for a mistrial. Although the trial court denied the motion for mistrial, the court sustained defense counsel’s objection to the prosecutor’s remarks, struck the remarks, and offered a curative instruction:
The objection is sustained. Going to strike the last comment and statements made by the attorneys. Ladies and gentlemen, you are to rely on your own recollection of the facts in this case. The facts are that which you determine to be true and relying on the evidence [as] you have heard it by way of testimony of witnesses and the exhibits that have been legally introduced as evidence in this case.
At the conclusion of closing arguments, the trial court instructed the jury that reasonable doubt could be based upon a lack of evidence. At various points throughout closing argument, the jury was also reminded that arguments of counsel are not evidence and that they must rely on the evidence submitted at trial in determining whether the State met its burden of proof.
The jury found Jennings guilty of attempted . trafficking in cocaine, a lesser included offense of trafficking in cocaine. Jennings moved for a new trial on the basis of the prosecutor’s improper remarks, but his motion was denied. He was sentenced to ten years in prison. This appeal followed.
DISCUSSION
I. Denial of Motion for Judgment of Acquittal
In the first issue raised on appeal, Jennings contends the trial court erred in *262 denying his motion for judgment of acquittal because the State failed to prove he was in constructive possession of cocaine. We reject this argument. The record contained evidence sufficient for the jury to conclude that the cocaine was within Jennings’ view and under his control.
A. Standard of Review
“The purpose of a motion for judgment of acquittal is to test the legal sufficiency of the evidence.” Espiet v. State, 797 So.2d 598, 601 (Fla. 5th DCA 2001). It is well-settled that “[i]n moving for a judgment of acquittal, a defendant ‘admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the [State] that a jury might fairly and reasonably infer from the evidence.’ ” Beasley v. State, 774 So.2d 649, 657 (Fla.2000) (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974)).
In circumstantial evidence cases, such as this case, “a special standard of review applies whereby the trial court is tasked with reviewing the evidence to determine whether competent evidence exists ‘from which the jury could infer guilt to the exclusion of all other inferences.’ ” Giralt v. State, 935 So.2d 599, 601 (Fla. 3d DCA 2006) (quoting Boyd v. State, 910 So.2d 167, 180 (Fla.2005)). This standard does not require the State to conclusively rebut every possible variation of events that could be inferred from the evidence, but only “to introduce competent evidence which is inconsistent with the defendant’s theory of events.” Id. “Once the State meets its threshold burden of creating an inconsistency with the defendant’s theory, the trial court should deny the motion for judgment of acquittal and allow the jury to resolve the inconsistency.” Id. at 602.[2]
B. Constructive Possession
Because there was a passenger in the front passenger seat, Jennings did not have exclusive possession of cocaine in the gym bag on the front passenger seat floorboard. The evidence, however, was sufficient for the jury to conclude that Jennings was in constructive possession.
To prove constructive possession, the State must present competent, substantial evidence of the accused’s knowledge of the presence of contraband and his or her ability to exercise dominion and control over it. Reynolds v. State, 983 So.2d 1192, 1194 (Fla. 3d DCA 2008); Links v. State, 927 So.2d 241, 243 (Fla. 2d DCA 2006). If the contraband is not located within the accused’s exclusive possession, the jury cannot infer the accused’s knowledge of and control over the contraband based upon proximity alone. Reynolds, 983 So.2d at 1194. Instead, the State must provide independent proof of these two elements. Blanchard v. State, 67 So.3d 309, 311 (Fla. 4th DCA 2011); State v. Cadore, 59 So.3d 1200, 1203 (Fla. 2d DCA 2011).
i. Knowledge
On the issue of knowledge, this matter is a straightforward plain view case. A person looking at the front passenger seat floorboard could see a large, unzipped gym bag with a visible square package that had the size and appearance typical of a packaged kilogram of cocaine. From this evidence, the jury could fairly and reasonably infer that the cocaine was in Jennings’ plain view from the driver’s seat. This fact alone is sufficient evidence of knowledge. Brown, v. State, 428 So.2d *263 250, 252 (Fla.1988), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983); Jiles v. State, 984 So.2d 622, 623 (Fla. 2d DCA 2008); Martoral v. State, 946 So.2d 1240, 1243 (Fla. 4th DCA 2007).
This is not a case where officers found contraband concealed from the defendant. See, e.g., Brown v. State, 8 So.3d 1187, 1189 (Fla. 4th DCA 2009) (Xanex in a jewelry box); Earle v. State, 745 So.2d 1087, 1090 (Fla. 4th DCA 1999) (cocaine concealed behind a door panel); Green v. State, 667 So.2d 208, 210 (Fla. 2d DCA 1995) (cocaine hidden in a compartment over the vehicle’s glove box).
The one twist on this point is that Jennings suggests a hypothesis of innocence based on the possibility that the gym bag was opened only after he left the car. Even if such a hypothesis were reasonable, the following facts conflict with it: (1) his attempt to keep the officer away from the car; (2) his extreme nervousness; and (3) the officer’s testimony that he had watched the other passengers and they made no movements towards the front passenger seat floorboard. Therefore, the issue was properly submitted to the jury to weigh the evidence.[3]
ii. Dominion and Control
Knowledge, of course, does not by itself establish the element of dominion and control. Jean v. State, 638 So.2d 995, 996 (Fla. 4th DCA 1994) (“It is conceivable that an accused might be well aware of the presence of the substance but have no ability to maintain control over it.”). “In many instances, however, the ability to control narcotics will be inferred from the ability to exercise control over the premises where they are found.” Johnson v. State, 456 So.2d 923, 924 (Fla. 3d DCA 1984).
In the leading case in this area, Brown, the Florida Supreme Court held that a jury question existed on the issue of dominion and control where officers found contraband in the defendant’s plain view in the kitchen, family room, and garage of a house he owned and occupied, even though he was renting space to other persons who also lived in the house. 428 So.2d at 252. The dominion and control element was met because the defendant had control over the common areas of his home. Id.
Properly understood, the rule of Brown, as applied to contraband found in a jointly occupied vehicle, can be stated simply as follows: generally, evidence that the defendant knew contraband was in the vehicle and had control of the vehicle is sufficient to create a jury question on the issue of dominion and control. See Ubiles v. State, 23 So.3d 1288, 1291 (Fla. 4th DCA 2010), review denied, 66 So.3d 304 (Fla. 2011) (applying Brown’s holding to the context of vehicles). Viewing the evidence in this case in the light most favorable to the State, this case fits within the ambit of Brown’s holding: (1) Jennings had control of the vehicle as the driver at the time the cocaine was discovered; and (2) Jennings knew he was transporting cocaine because the cocaine was in his plain view.[4]
*264 In Ubiles, the Fourth District applied Brown, in a review of probation revocation, to hold that the driver of a vehicle with a passenger had construction possession of marijuana cigarettes in an open ashtray, which was accessible to the driver and the passenger. Ubiles, 28 So.3d at 1291. The court reasoned, “because Ubiles owned and was driving the vehicle, and the marijuana was in plain view, it can also be inferred that he had dominion and control of the marijuana cigarettes in the ashtray.” Id. We find this approach persuasive.
Similarly, Judge Altenbernd’s concurrence in Williams v. State, 110 So.3d 59 (Fla. 2d DCA 2013), reflects our view of the proper state of the law in this area. In Williams, officers stopped a car that had three occupants. Id. at 61. From outside the vehicle, the officers detected a strong odor of fresh marijuana that they traced to a bag in the hatchback of the car. The bag contained a pound of marijuana. Id. at 62. The Second District held a jury could not find that the driver had dominion and control of the marijuana, even though a jury could infer that the driver knew she was transporting a substantial amount of marijuana given the strong odor of marijuana permeating the vehicle. Id. at 65.
Because the difference between “plain smell” and “plain view” is a distinction without a legal difference in this context, we conclude that Williams does not conform to the Florida Supreme Court’s precedent in Brown as subsequently applied to vehicles. The driver in Williams was knowingly transporting a relatively-large amount of marijuana found in a common area of the vehicle. In our opinion, the issue of constructive possession was properly submitted to the jury.
Judge Altenbernd, in his concurrence, indicated he was bound by Second District precedent to join the majority. He stated, however,
If I were writing on a clean slate, I would be inclined to believe that a jury should be authorized to return a guilty verdict on a drug charge where the defendant is an operator of a motor vehicle and has actual knowledge that the vehicle contains illegal drugs that easily could be removed from the vehicle.
Id. at 65 (Altenbernd, J., concurring). We agree.
Jennings, as the driver in this case, clearly had control over the car. Merely moving the car when cocaine was in plain view on the front passenger seat floorboard, and thereby knowingly transporting a substantial amount of cocaine, was an exercise of dominion and control. The presence of passengers in the car did not deprive Jennings of control over the interi- or of the car, including the front passenger seat floorboard, any more than the presence of other occupants in Brown negated the defendant’s control over contraband found in his plain view in common areas of a house he owned and occupied. Brown and its progeny therefore dictate that sufficient evidence existed for the question of the driver’s dominion and control to be submitted to the jury.
We acknowledge that a jury issue on a driver’s dominion and control over contraband may not be present under different circumstances. For example, the State may fail to present evidence inconsistent with a reasonable hypothesis of innocence that a passenger had exclusive dominion and control over the contraband. See, e.g., Corker v. State, 31 So.3d 958, 960 (Fla. 1st DCA 2010) (holding, in a review of probation revocation, that a male driver did not have dominion and control over “marijuana in a multicolored makeup pouch concealed in the back seat of the car near where the female passenger in question was sitting”). But this concern is generally not implicated where, as here, the de *265 fendant knowingly transports a large quantity of contraband found in a common area of the vehicle. We therefore affirm the denial of the motion for judgment of acquittal.
II. Denial of Motion for Mistrial
In the second issue raised on appeal, Jennings argues the trial court abused its discretion when it refused to grant a mistrial following improper remarks by the prosecutor in closing argument. We disagree. In light of our review of the entire record, we conclude that the trial court did not abuse its discretion when it issued a curative instruction instead of granting a mistrial.
A. Standard of Review
A motion for a mistrial should be granted only when an error is so prejudicial as to vitiate the entire trial, which is another way of saying that the motion should be granted only when necessary to ensure the defendant a fair trial. Salazar v. State, 991 So.2d 364, 372 (Fla.2008). “A trial court’s ruling on a motion for mistrial is presumed correct and will not be reversed on appeal absent a clear showing of abuse of discretion.” Boyd v. State, 963 So.2d 884, 886 (Fla. 3d DCA 2007) (citation omitted), Under this standard, a trial court’s decision will not be overturned unless it is “arbitrary, fanciful, or unreasonable.” Huff v. State, 569 So.2d 1247, 1249 (Fla.1990) (quoting Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980)). In other words, a trial court abuses its discretion if no reasonable person would take the view adopted by the court. Id.
The essential aspect of this case that determines the standard of review is the trial court correctly determined that the State’s argument was improper, sustained the objection, struck the remarks, and issued a curative instruction. This feature of the case clearly distinguishes it from cases cited by the dissent that apply the harmless error analysis.
Where a court commits the error of allowing, or failing to correct, improper testimony or argument despite the defense’s objection, the standard of review is the harmless error analysis. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). That analysis places the heavy burden on the State, as the beneficiary of the error, to show “no reasonable possibility that the error contributed to the conviction.” Id.
The Florida Supreme Court, however, held that the harmless error analysis does not apply where, as here, the State was not the beneficiary of any error because the trial court recognized the improper argument:
The use of a harmless error analysis ... is not necessary where the trial court recognizes the error, sustains the objection, and gives a curative instruction. Rather, the correct appellate standard of review is whether the trial court abused its discretion in its denial of a mistrial.
Anderson v. State, 841 So.2d 390, 403 (Fla. 2003) (internal citations omitted); see also Villanueva v. State, 917 So.2d 968, 972 (Fla. 3d DCA 2005).
B. The Improper Remarks
We agree with the trial court that the prosecutor’s remarks, although provoked by defense counsel’s improper arguments, were themselves clearly improper. Not content to stay within the. proper bounds of argument that the lack of DNA evidence might raise a reasonable doubt, defense counsel went further and improperly insinuated that the State was lying in order to conceal DNA evidence that could exonerate Jennings. The defense pressed this argument in its closing argument by referring to the arresting officer’s testimo *266 ny as “stupid,” “poppycock,” and “a lie.” Nevertheless, as the trial court properly found, it was still improper for the State to reply with its suggestion that the absence of DNA evidence at trial that “could possibly implicate” Jennings was due to his action in insisting on an early trial date.
The State argues the prosecutor’s comments were not error, but rather a fair reply to defense counsel’s improper remarks in closing argument, citing to Broge v. State, 288 So.2d 280, 281 (Fla. 4th DCA 1974) (holding a prosecutor’s comments indicating his personal belief in the State’s witnesses was a fair reply to defense counsel’s attack on the veracity of the State’s witnesses). The fair reply doctrine, however, has limits. Kearney v. State, 846 So.2d 618, 621 (Fla. 4th DCA 2003).
Initially, the prosecutor responded to the defense’s insinuations by pointing out that no one knew the results of the DNA tests; by emphasizing the length of time it takes to obtain DNA test results; and by downplaying the probative value of the potential DNA evidence in the facts of the case. These arguments were an appropriate response. But the prosecutor did not stop there. The prosecutor exceeded the scope of a fair reply by suggesting the defendant was exercising his right to a speedy trial to prevent possibly incriminating evidence from coming forward. See Hazelwood v. State, 658 So.2d. 1241, 1243-44 (Fla. 4th DCA 1995) (holding that the prosecutor’s explanation of a defendant’s subpoena power was a fair reply to defense counsel questioning the absence of testimony from certain witnesses, but going a step further to claim uncalled witnesses would bolster the State’s case exceeded the boundaries of a fair reply). Without much difficulty, we hold the trial court was correct in concluding that the prosecutor’s remarks were improper.
C. The Curative Instruction
Recognizing that the prosecutor’s comments went too far, the trial court sustained defense counsel’s objection to the improper remarks, struck the remarks, and provided a contemporaneous curative instruction instead of granting a new trial. In determining whether the improper remarks warrant a new trial, the remarks must be examined in “the context of the closing argument as a whole and considered cumulatively within the context of the entire record.” McArthur v. State, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001). We conclude that the curative instruction in this case was sufficient to dispel the prejudicial effect of the prosecutor’s remarks in light of our examination of the entire record at trial.
“Generally speaking, the use of a curative instruction to dispel the prejudicial effect of an objectionable comment is sufficient.” Rivera v. State, 745 So.2d 343, 345 (Fla. 4th DCA 1999) (citing Buenoano v. State, 527 So.2d 194 (Fla.1988)). In Espute v. State, 85 So.3d 532, 536 (Fla. 4th DCA 2012), for example, the Fourth District held the trial court did not abuse its discretion in denying a mistrial after the prosecutor commented on the defendant’s right to silence during cross-examination of the defendant because the defense’s objection was sustained and followed by a curative instruction to “disregard the last question, draw no inferences from it” and cross out any notes regarding the comment. Similarly, in Thomas v. State, 726 So.2d 369, 372 (Fla. 4th DCA 1999), the court held a prosecutor’s impermissible comment in rebuttal closing argument on the failure of the defense to call a witness did not require a new trial because the trial court instructed the jury that the defense had no burden of proof.
Turning to the instant case, when placed in context, the upshot of the prosecutor’s *267 remarks was to negate the defense’s false insinuation that the State was withholding evidence that exonerated Jennings. In the State’s closing argument, it reminded the jurors of the officer’s testimony that no one knew the outcome of the DNA tests. The State also explained that DNA on the cocaine packages would have very limited probative value anyway because skin particles and hair follicles of anyone in the car could easily have landed on the open bag and its contents, whether or not the person actually handled the packages. The State would hardly have emphasized these points if it was trying to persuade the jurors that the unknown results of the DNA test actually implicated Jennings.
Second, this whole dispute was merely a passing sideshow in the trial. The remarks played no part in the State’s initial closing argument or case-in-chief against Jennings, which had instead focused on the ample evidence in the record supporting Jennings’ conviction. For that matter, based upon our review of the entire trial transcript, the contention of the defense that the State was lying about the DNA results was not a major part of the defense’s cross-examination or closing argument.
Finally, it was clear to an attentive juror that both sides were merely speculating. After the defense brought out the fact that the DNA swabs were taken at the scene, but no test results were entered into evidence, every juror was aware of the obvious possibility that the unknown laboratory results might help one side or the other. The defense’s improper insinuation that the DNA test results might exonerate and the prosecutor’s improper insinuation that the DNA test results “could possibly” implicate were mirror images of the same obvious, gratuitous, and rank speculation.
In summary, both the defense and the State embarked on an improper, but fleeting, diversion from the evidence in the record that had the tendency to draw the jurors’ attention away from the facts in the record and into the clouds of speculation.
In this context, the trial court sustained defense counsel’s objection to the prosecutor’s comments, struck the comments, and gave the curative instruction reminding the jury to focus on the evidence admitted at trial. This- instruction directed the jurors’ focus away from speculation and towards the evidence. In fact, at several other points, the trial court instructed the jurors that arguments of counsel are not evidence and that they must rely only on the evidence submitted at trial in determining guilt. The beneficial effect of the curative instruction was further enhanced by the trial court’s directive at the conclusion of closing argument that reasonable doubt could be based upon a lack of evidence, a point emphasized by the defense in its closing argument.
The trial judge has discretion in these matters because she has a unique vantage point. Being present in the courtroom and having listened to the witnesses, examined the exhibits, heard the arguments, and observed the jurors, the trial judge was in the best position to gauge the impact of the improper arguments on the entire trial. The trial judge’s unique vantage point in this regard is precisely why the question of whether to" issue a curative instruction or to grant a mistrial rests within her sound discretion.
Considering the controversy in light of the entire record, we conclude that the trial judge’s decision to issue a curative instruction, rather than grant a mistrial, was not an abuse of discretion. In order to hold otherwise, we would have to determine that no reasonable person could agree with her decision and that her decision was arbitrary or fanciful. We fail to see how the measured response of the trial *268 judge in this case could be characterized in such a manner.
CONCLUSION
Because Jennings was not denied a fair trial and legally sufficient evidence supported his conviction, the decision under review is affirmed.
ROTHENBERG, J., concurs.

. The filing of a notice of expiration of speedy trial time triggers the protections set forth in Florida Rule of Criminal Procedure 3.191, including the requirement that the trial court hold a hearing within five days of the filing of the notice. State v. Pfeiffer, 872 So.2d 313, 314-15 (Fla. 4th DCA 2004). If no exceptional circumstances exist, the defendant must be tried within ten days or discharged. Id. at 315.

. The utility of this special standard has been called into question and most jurisdictions have discarded it for an across-the-board standard of reasonable doubt. See Knight v. State, 107 So.3d 449, 456-58 (Fla. 5th DCA 2013).

. Although a defendant’s nervousness during a traffic stop alone is insufficient evidence of knowledge of contraband in a vehicle, see, e.g., Hill v. State, 736 So.2d 133, 134 (Fla. 1st DCA 1999), it is one factor among others a trier-of-fact may consider in constructive possession cases. See Meme v. State, 72 So.3d 254, 257 (Fla. 4th DCA 2011).

. Although not necessary to our holding, additional facts that support a jury finding of dominion and control here include: (1) Jennings rented the car; and (2) Jennings attempted to protect the cocaine from discovery by trying to keep the officer away from the car.