# Third District Court of Appeal

## State of Florida

Opinion filed March 24, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-0050
Lower Tribunal No. 15-24325
_____

**Hialeah Hospital, Inc.,**
Appellant,

vs.

**Joshua Misius Hayes-Boursiquot, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

Falk, Waas, Hernandez, Solomon, Mendlestein & Davis P.A., and Glenn P. Falk and Scott L. Mendlestein and Khristen S. Vachal-Reese; Greenberg Traurig, P.A., and Elliot H. Scherker and Brigid F. Cech Samole and Katherine M. Clemente, for appellant.

Law Offices of Alan Goldfarb, P.A., and Alan Goldfarb and David C. Appleby; Joel S. Perwin, P.A., and Joel S. Perwin; R. Fred Lewis (Tallahassee), for appellee.

Before LINDSEY, MILLER and BOKOR, JJ.

BOKOR, J.

Hialeah Hospital, Inc. ("Appellant" or "Hialeah Hospital") urges reversal of the jury verdict in favor of The Estate of Arleisha Hayes ("Appellee" or "the Estate") based on the trial court's refusal to permit the exercise of a defense peremptory challenge of an African-American potential juror. Hialeah Hospital also argues the trial court abused its discretion in refusing to grant a new trial after allowing inadmissible expert testimony during trial.[1] For the reasons that follow, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 2014, Arleisha Hayes was admitted to Hialeah Hospital for respiratory failure and acute exacerbation of bronchial asthma. Over the course of several days, Ms. Hayes's medical condition deteriorated, eventually reaching a critical point requiring a rapid response by hospital staff. On February 7th, 2014, Hialeah Hospital's house physician[2] evaluated Ms. Hayes, ultimately deciding not to recommend further intervention. Sadly, despite the emergent response, Ms. Hayes passed. The Estate sued

---

[1] Hialeah Hospital also appeals the trial court's refusal to grant a directed verdict based on lack of causation. The record demonstrates competent substantial evidence to support causation. Accordingly, we summarily affirm on this ground. See Graham Companies v. Amado, 305 So. 3d 572, 575-77 (Fla. 3d DCA 2020).

[2] It is worth noting that a house physician is not licensed to practice medicine. Instead, pursuant to state law and Hialeah Hospital's policies, a house physician must be supervised by a licensed physician at all times.

Hialeah Hospital for negligence, alleging that its failure to properly assess and treat the decedent's later-discovered pneumonia caused or contributed to her death.

Prior to trial, the parties agreed not to reference the licensed physicians who cared for Ms. Hayes (the "Pretrial Agreement").[3] Nonetheless, Appellant's counsel repeatedly discussed the involvement of numerous licensed physicians despite the Pretrial Agreement. Similarly, Appellee's expert witnesses testified as to the attending licensed physician's failure to supervise the house physician during the rapid response and to prescribe medicine. During trial, Appellee's expert witness also testified as to the illegality of the house physician's practice of medicine without a license based on her understanding as a licensed physician.[4] Upon objection, the trial court provided a curative instruction explaining to the jury that a doctor was unable to opine as to legal matters. Thereafter, the jury returned a verdict in favor of the Estate.

---

[3] In pertinent part, the Pretrial Agreement provided that "there will be no evidence, testimony, claims, arguments, references, or suggestions made during the course of the proceeding that would suggest or lead to any inference of fault or liability as to the care and treatment rendered by any of Arleisha Hayes' Florida licensed treating physicians."

[4] Appellee's expert witness also discussed the house physician's "arrogance and willingness to disobey" in a video deposition which was improperly edited and presented to the jury.

## II.  ANALYSIS

Hialeah Hospital seeks a new trial based on the following purported errors: (a) sustaining a <u>Melbourne</u> challenge[5] to a defense peremptory strike; and (b) allowing inadmissible and prejudicial expert testimony.  We address each issue in turn.

### a. <u>Melbourne</u> Challenge

During jury selection, Appellant's counsel sought to exercise peremptory challenges to excuse three potential jurors belonging to a protected class based on race, specifically, one Haitian-American and two

---

[5] <u>See</u> <u>Melbourne v. State</u>, 679 So. 2d 759, 764 (Fla. 1996).  <u>Melbourne</u> established the following guidelines for a trial court's evaluation of whether an impermissible race-based motive underlies a party's peremptory challenge:

> [Step 1.] A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike.
> [Step 2.] At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.
> [Step 3.] If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.

<u>Julmice v. State</u>, 14 So. 3d 1199, 1203 (Fla. 3d DCA 2009).

African-American potential jurors.[6]  Appellant takes issue on appeal with only the third peremptory challenge in which the trial court upheld Appellee's third Melbourne challenge.  In sustaining this Melbourne challenge, the trial court found what it considered to be an impermissible pattern of peremptory challenges based on race.  Accordingly, we examine the trial record to discern whether the trial court abused its discretion in finding an impermissible pattern of striking jurors based on race.

In each of the three Melbourne challenges, Appellee's counsel timely objected, noted that each challenged potential juror was a member of a protected class based on race, and sought a race-neutral and non-pretextual reason for the peremptory challenge.  For the Melbourne challenge related to the first potential juror, Appellant's counsel proffered the race-neutral explanation that this potential juror expressed a devotion to policies and procedures in the context of her employment as a baker at Whole Foods.  Counsel explained that he exercised a peremptory challenge on this potential juror because policies and procedures would feature heavily during trial.  The trial court found this explanation race-neutral and non-pretextual and overruled the Melbourne challenge.  For the second challenged potential

---

[6] Notably, the decedent was identified by the Estate's counsel as "Haitian and African-American."

juror, Appellant's counsel proffered that this potential juror's employment as hospital staff and relationship with a nurse rendered him unsuitable. After consideration, the trial court found the explanation pretextual and sustained the Melbourne objection.

Finally, for the third Melbourne challenge, the only one challenged on appeal, Appellant's counsel proffered the race-neutral explanation that he sought to strike this potential juror due to his training and experience in the medical field as a licensed practical nurse. In this case, the trial court found that Appellant's race-neutral explanation was not genuine due to an impermissible pattern of seeking to excuse potential jurors based on race.[7] Accordingly, the trial court sustained the Melbourne objection.

The trial court's focus during a Melbourne challenge is not "the reasonableness of the asserted nonracial motive . . . [but] rather . . . the *genuineness* of the motive[,] . . . . a finding which turn[s] primarily on an assessment of credibility." Melbourne, 679 So. 2d at 764 (internal quotations omitted) (emphasis in original). This Court evaluates the trial court's assessment of credibility under a clearly-erroneous standard of review. See Melendez v. State, 787 So. 2d 918, 920 (Fla. 3d DCA 2001); see also Pringle

---

[7] In considering, and rejecting, Appellant's race-neutral explanation and assessing credibility, the trial court noted that "[a] pattern of striking members of a racial group is relevant to the Court's determination."

6

v. State, 792 So. 2d 533, 536 (Fla. 3d DCA 2001). It is well established that a juror's occupation can be the foundation of a proper peremptory challenge. See Landis v. State, 143 So. 3d 974, 979 (Fla. 4th DCA 2014); see also James v. State, 768 So. 2d 1221, 1223 (Fla. 3d DCA 2000). Here, however, the record demonstrates that Appellant's counsel exercised three peremptory challenges in a row on members of a race-protected class matching the decedent's identification. Additionally, the trial court found the proffered reasons for two of three such challenges pretextual. Accordingly, there is sufficient record evidence to support the trial court's credibility assessments such that they may not be disturbed under the clearly-erroneous standard.

Moreover, a trial court may consider logical implications in evaluating the likelihood of racial discrimination where a pattern exists. See Sparks v. Allstate Const., Inc., 16 So. 3d 161, 164 (Fla. 3d DCA 2009). A trial court's finding of pretext premised on a pattern will survive review under an abuse of discretion standard where, as here, the "transcript demonstrates a systematic use of [peremptory challenges], followed by what seem to be quickly-contrived excuses for the strikes, in a manner calculated to exclude African Americans from serving on the jury." Id.; see also Melbourne, 679 So. 2d at 765 (noting that this court's review is guided by "reason and

common sense"). As such, we find that the trial court properly exercised its discretion in sustaining a <u>Melbourne</u> challenge based on an impermissible pattern of striking potential jurors based on race.

### b. Expert Testimony

We review the denial of a motion for a new trial for abuse of discretion. <u>50 State Sec. Serv., Inc. v. Giangrandi</u>, 132 So. 3d 1128, 1133 (Fla. 3d DCA 2013). First, Appellant argues that the trial court's refusal to enforce the Pretrial Agreement and subsequent denial of its motion for a new trial constitutes reversable error. In response, Appellee argues Appellant "opened the door" once it introduced evidence and testimony in contravention of the stipulation. While a pretrial stipulation should be strictly enforced, <u>LPI/Key W. Assocs., Ltd. v. Beachcomber Jewelers, Inc.</u>, 77 So. 3d 852, 854 (Fla. 3d DCA 2012), a trial court has broad discretion due to its unique vantage point both to determine the scope of an alleged violation, if any, and the appropriate remedy. See <u>Jennings v. State</u>, 124 So. 3d 257, 266 (Fla. 3d DCA 2013) ("Being present in the courtroom and having listened to the witnesses, examined the exhibits, heard the arguments, and observed the jurors, the trial judge was in the best position to gauge the impact of the improper arguments on the entire trial.").

In its order, the trial court found mistrial unwarranted, noting "that both parties elicited testimony about other doctors and the actions they took." Here, the record supports the trial court's determination that both parties violated the Pretrial Agreement on numerous occasions. We therefore conclude that the trial court did not abuse its discretion in finding that the stipulation violations did not warrant a new trial.

Second, Appellant argues the trial court erred in refusing to grant a new trial after allowing inadmissible and unduly prejudicial testimony. Namely, Appellant contends references to the house physician's "arrogance, willingness to disobey and illegal behavior" merit a new trial. However, a trial court should only grant a mistrial when the error is prejudicial enough to vitiate the entire trial. Ward v. State, 306 So. 3d 1004, 1007 (Fla. 3d DCA 2020). As we explained in Ward,

> In order to grant a mistrial based on impermissible trial testimony from a witness, the witness's comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.

Id. (internal citations omitted); see also Talley v. State, 260 So. 3d 562, 568 (Fla. 3d DCA 2019) (explaining that mere prejudicial error does not merit reversal of a trial court's determination).

In this case, it appears the expert witness's deposition was inadvertently presented to the jury as an isolated part of trial. In other words, the video deposition remarking on the house physician's "arrogance and willingness to disobey" did not become the "focus of the trial." Ward, 306 So. 3d at 1007. As such, Appellant was not deprived of a fair trial. Further, "this is particularly true where an appropriate curative instruction is given." Id. Here, the record reflects that the trial court provided a curative instruction after Appellee's expert witness testified as to the illegality of practicing medicine without a license. See Jennings, 124 So. 3d at 266 ("Generally speaking, the use of a curative instruction to dispel the prejudicial effect of an objectionable comment is sufficient."). Accordingly, we find that the trial court did not abuse its discretion in issuing a curative instruction instead of granting mistrial.

Affirmed.