909 So.2d 292 (2005)
Jeffrey L. SUTTON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-1503.
District Court of Appeal of Florida, Third District.
September 29, 2004.
Opinion Denying Rehearing August 10, 2005.
Bennett H. Brummer, Public Defender, and Robert Godfrey, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before COPE, GERSTEN and GREEN, JJ.
PER CURIAM.
Jeffrey L. Sutton appeals his conviction for second degree murder. We affirm.
In the first point on appeal, the State concedes that the trial court erred by overruling a defense objection to certain hearsay testimony giving a description of defendant-appellant Sutton shortly after the date of the crime. See Puryear v. State, 810 So.2d 901, 903-04 (Fla.2002). We are convinced, however, that this error was harmless beyond a reasonable doubt. *293 See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Second, the defendant requested a jury instruction "that the testimony of an addict is to be scrutinized with great caution." TR. 519. The eyewitness to the murder testified that she had consumed one or two rocks of cocaine on Friday night, and then drank alcoholic beverages throughout the weekend. The shooting was on Sunday. The trial court denied the request for the special instruction.
We find no error. The Florida Supreme Court has said that "the judge should not invade the province of the jury by commenting on the evidence or indicating what inferences may be drawn from it." Fenelon v. State, 594 So.2d 292, 294 (Fla.1992). The instruction requested by the defense would have been contrary to that mandate, as it would have directed the jury how to weigh the testimony of the eyewitness.
In this case the eyewitness was questioned about her drug and alcohol consumption and her ability to perceive and report what she had seen. The same issue was explored in questions put to the police officers who interviewed this eyewitness right after the shooting. The issue was within the common understanding and common sense of lay jurors and the standard jury instruction on weighing the evidence was adequate. See Fla. Std. Jury Instr. (Crim.) 2.04.
The defense argues, however, that in the federal Eleventh Circuit there is a pattern jury instruction along the lines requested by the defendant in this case. See Eleventh Circuit Pattern Jury Instructions (Criminal Cases) § 1.3 (2003), available at www.ca11.uscourts.gov/documents/jury/crimjury.pdf. That may be so, but under Fenelon, the trial court correctly rejected the request for the special jury instruction.
Affirmed.

On Rehearing Denied
COPE, C.J.
The defendant has moved for rehearing, arguing that the evidentiary error in this case cannot be harmless under State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The defendant points out that the DiGuilio decision states, in part, that "[t]he test [for harmless error] must be conscientiously applied and the reasoning of the court set forth for the guidance of all concerned and for the benefit of further appellate review." Id. at 1139. While we adhere to the view that the error was harmless, we amplify our reasoning.
The State charged the defendant with the second degree murder of Alfred Daniels on Sunday, March 14, 1999. According to the State witnesses, the defendant believed that Alfred Daniels, his friend Sheila Simmons, and Angela Jones had broken into his car and stolen his property. Three witnesses testified that the defendant was angry and approached each of them looking for Alfred on Sunday morning.
According to the State's witnesses, the defendant found Alfred at home at about 2:30 in the afternoon. There was a confrontation between the two men at the front gate. Alfred turned to walk back into the house and the defendant shot him in the lower back, and Alfred died several hours later. Sheila Simmons testified that the defendant was the shooter. Alfred's brother Maxie testified that he received a telephone call from the defendant apologizing for the shooting.
The defendant presented witnesses stating that the defendant had been living in Atlanta prior to this incident and that on the weekend of March 12-14, he had traveled *294 to Jasper, Florida to attend a birthday party for Caroline Lee, the wife of the defendant's brother Jamerson "Sonny" Lee. Jamerson Lee testified that the defendant and their brother, Carl McKier, arrived in Jasper on Friday evening and stayed through Sunday at 6:00 p.m., at which time they returned to Atlanta.
Each side attacked the credibility of the other side's witnesses. The defense contended that Sheila Simmons could not be believed because she was admittedly an alcoholic and user of crack cocaine. The same was true of another State witness. The defense argued that the victim's brother Maxie was shading his testimony to try to help the State win the prosecution. The defense contended that in Maxie's testimony, he had effectively conceded that he did not recognize the defendant's voice in the telephone call of apology and had assumed it was the defendant without knowing it was so.
The State argued that the alibi witnesses all had ties to the defendant and had fabricated the alibi for him. The witnesses who testified were the defendant's brother Jamerson Lee, his sister Brenda Lindsey, and Marsha White, the former girlfriend of another of the defendant's brothers, Carl McKier, with whom she had two children. Jamerson Lee testified that photographs had been taken at the birthday party on Sunday March 14 and the photographs included the defendantbut the family had been unable to find the photographs. The State argued that this testimony was unbelievable and the alibi should not be accepted because no one came forward with it until long after the defendant's arrest.
As part of its case, the State contended that the defendant had done four things which indicated consciousness of guilt: (1) the defendant hid from the police and fled to Atlanta; (2) the defendant cut his hair to change his appearance; (3) the defendant denied that he was Jeffrey Sutton when he was arrested in Atlanta two months after the crime; and (4) the defendant attempted to give the arresting officers a false name at the time of his arrest.
Regarding the defendant's physical appearance, the State introduced "before" and "after" photographs. The "before" photograph showed the defendant's appearance prior to the crime. In this photograph the defendant's hair was of medium length.
The "after" photograph was taken when the defendant was arrested in Atlanta two months after the crime. This photograph shows the defendant with an extremely short haircut which appears to be perhaps one quarter inch in length. Both of these photographs were given to the jury to compare.
The Georgia officer who arrested the defendant testified that in attempting to execute the arrest warrant, the officers called out to the defendant by name. He did not respond. After conducting a search through the house, the officers located the defendant. When the officer asked the defendant whether he was Jeffrey Sutton he denied it. He told the officers instead that his name was Sonny. Sonny is the name of the defendant's brother.
The item of evidence which was improperly admitted was the following. Detective Mark Martinez was in charge of the homicide investigation. He testified that in attempting to locate the defendant in the days after the murder, the detective spoke with the defendant's girlfriend's sister Charlene Perkins. Detective Martinez testified:
Q. Was she able to provide you with any statements identifying what the subject looked like?

*295 A. Yes, she did.
Q. What were those statements?
A. I believe she had mentioned that
MR. MONDRY: Objection for the record, calls for speculation, it's hearsay.
THE COURT: Is there [an] exception?
MR. RODRIGUEZ: Yes, Judge. They're statements of identification, physical description of the Defendant.
THE COURT: Overruled.
. . . .
Q. Go ahead.
A. She said that she had noticed that he had shaved his hair and that he now had sideburns, mustache and goatee. He no longer had the hair.
TR. 274-75.
As stated in our original opinion, the hearsay exception relied on by the State during the trial does not apply to testimony giving a description. See Puryear v. State, 810 So.2d 901, 903-04 (Fla.2002). Thus, the defense objection should have been sustained.[1]
The defendant contends that this error cannot be harmless because in closing argument the prosecutor included this testimony as a factor indicating consciousness of guilt. The prosecutor said, in part:
Now, the Defendant managed to stay hidden until May 11th of 1999 when he was finally caught. It's very important to note that when he's caught, look at his hair style. Remember Sheila identified him the day of the homicide with the hair in the little rolls? And what do we hear, that Angela and Melissa tell you he shaved his head.[2] And when he's in Georgia, he's got a very short haircut. Consciousness of guilt. Same reason he gave the name Sonny. He knew he was being looked for. So what does he do? What's the easiest way to right away change your appearance? Shave your head. And if you had nothing to hide and if the cops don't want you and if you don't know you have an arrest warrant out for the homicide of Alfred Daniels, why tell them you're Sonny? Why hide out in the bedroom or basement, depending on which witness you believe, why do that?
. . . .
Let's look at the Defendant's own actions. He did a lot of things that proves he's guilty. What's the first thing you know he was doing? He was looking for Alfred. Tyrone wasn't looking for Alfred, nobody else around the neighborhood was looking for Alfred, he was looking for Alfred.
Second thing he does, he makes the phone call. I'm sorry. Tell your mother I'm sorry. He felt bad for what he did. Because he shot someone in the butt, he probably didn't think it was going to be anything other than a flesh wound and he felt bad that he died.
The third thing he does, he changes his appearance right away, again, with the shaved head. Why shave your head if you didn't do anything wrong?
Fourth thing he does he flees to Georgia. He hides out in his sister's place in Georgia. And finally, when they do finally get to him, I'm not Jeff Sutton. *296 That warrant is not for me, I'm not Jeff Sutton.
TR. 550-51, 556-57.
The erroneously admitted testimony was harmless. As a preliminary matter, the defendant's main defense was alibi. The defense position was that the defendant's physical appearance was totally irrelevant, because the defendant's defense was that he was not present in Miami at the time of the crime. Defense counsel argued, in part:
I'm sure some guy had a gun because our defense is not someone wasn't killed, that's an unfortunate act that I'm sorry for as a human being, that Mr. Sutton is sorry for as a human being.
. . . .
[T]hat isn't being contested here and we're sorry for that. What's being contested is that whether Mr. Sutton was there or not and did it. And you need reliable evidence to convince you beyond a reasonable doubt that it is, and it's not there.
TR. 575-76.
The defense did make an alternative argument that even if the alibi witnesses were disbelieved, the State had nonetheless failed to prove its case beyond a reasonable doubt. The question of harmless error relates to the defendant's alternative argument.
We conclude that the error was harmless because the erroneously-admitted testimony was cumulative to the testimony of the Georgia arresting officer. When the Georgia officer arrested the defendant, he took a photograph which clearly shows the defendant with extremely short hair. The jury had the "before" and "after" photos to compare. The State argued that the defendant's change in appearance was evidence of consciousness of guilt. Regardless of Ms. Perkins' testimony, the change in appearance was documented in the photographs. Whether the defendant's head was literally shaved, as stated by Ms. Perkins, or extremely short, as shown by the photograph, there is a clear difference between the "before" and "after" photographs.
Beyond that, there was other striking evidence of consciousness of guilt, which came in through the Georgia police officer. This was the defendant's refusal to come out of the house, his lying to the Georgia officers about his identity, and his attempt to pass himself off as his brother Sonny. Those actions by the defendant have no plausible explanation under the facts of this case. For the stated reasons, we conclude that the evidentiary error in this case was harmless beyond a reasonable doubt.
The defendant also argues that under DiGuilio, if evidence is erroneously admitted at a trial and if that evidence is argued to the jury, then there must be an automatic reversal. That is not an accurate interpretation of DiGuilio. See Goodwin v. State, 751 So.2d 537, 539 (Fla.1999) (harmless error statutes were enacted to substitute judgment for the automatic application of rules); DiGuilio, 491 So.2d at 1134 (rejecting rule of automatic reversal in case of trial error); see also Mendoza v. State, 700 So.2d 670, 678 (Fla.1997) (finding evidentiary error to be harmless under the circumstances of the case, even though argued to the jury).
Rehearing denied.
NOTES
[1] If Ms. Perkins had testified to this at trial, the testimony would have been admissible, but she was not called as a witness. Her statement came in through the detective and as such, was hearsay.
[2] The prosecutor apparently misspoke. As we interpret the detective's testimony, the statement that the defendant had shaved his head came from Charlene Perkins. TR. 274.