963 So.2d 837 (2007)
Kirk Douglas BILLIE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-585.
District Court of Appeal of Florida, Third District.
August 8, 2007.
Rehearing Denied September 26, 2007.
Broad and Cassel and Beverly A. Pohl, Bruce S. Rogow, Ft. Lauderdale, for appellant.
Bill McCollum, Attorney General, and Richard L. Polin, Assistant Attorney General; Katherine Fernandez Rundle, State Attorney, and Christine E. Zahralban, Assistant State Attorney, for appellee.
Before WELLS and LAGOA, JJ., and SCHWARTZ, Senior Judge.
LAGOA, J.
Kirk Douglas Billie ("Billie") appeals a final judgment of conviction and sentence. For the reasons set forth below, we affirm.
In Billie v. State, 863 So.2d 323 (Fla. 3d DCA 2003), we reversed Billie's second-degree murder conviction for the death of his two sons, holding that evidence of Billie's prior bad acts had been admitted into evidence impermissibly. This appeal arises from Billie's second trial.
I. FACTS[1]
During the early morning hours of June 27, 1997, Billie, a Miccosukee Indian, sunk a stolen Chevrolet Tahoe into a canal, killing *839 two of his children, Kurt and Keith Billie. The Tahoe belonged to Sheila Tiger, Billie's former girlfriend and the mother of the children.
Billie disapproved of the manner in which Tiger was raising the children. He complained that she would drive through the reservation at night while the children slept in the Tahoe. On the night of their deaths, Billie unsuccessfully sought Tiger's permission to visit with the children. Tiger told Billie that the children were asleep at her mother's house and that he could not see them.
Billie, who became increasingly intoxicated throughout the evening, attempted to locate either Tiger or the children. During his search, Billie entered Tiger's trailer and left a note which stated, "[d]on't ever think the kids will stop me." Tiger identified the handwriting as belonging to Billie and further testified that she had not seen the note before that night. Billie had previously warned Tiger that if she continued to drive the Tahoe with the children in the back he would take it and drive it into the canal. When Billie eventually found the Tahoe parked in front of a house, Tiger was not present. Instead, Melody Osceola, Tiger's fifteen year-old cousin, was in the truck and exited the vehicle with Tiger and Billie's youngest child, Kirkland. Billie entered the Tahoe and drove off. After driving off with the Tahoe, Billie drove the vehicle to a canal where he released the Tahoe and allowed it to sink into the canal. His two children, Kurt and Keith, were in the backseat of the Tahoe when the vehicle sank into the canal.
Tiger reported the children and the Tahoe missing, and Billie was arrested by a Miccosukee police officer. Billie told the officer that he did not know the location of either the children or the Tahoe. In a police holding cell, Tiger asked if Billie knew the children were in the Tahoe, and he responded "yeah." After almost ninety minutes, Billie led the police to the canal.
At the canal, a Miami-Dade rescue officer attempted to ascertain the precise location at which the Tahoe entered the water. The officer asked Billie if he had caused the Tahoe to enter the canal. Billie responded, "that is why you are here, I had a fight with my wife and I made a threat and I carried it out."
As we noted regarding the first trial, in which Billie was charged with two counts of first-degree murder, "[t]he only dispute at trial concerned Billie's knowledge of the children's presence in the car at the time he drove the car into the canal." Billie, 863 So.2d at 324. At the charge conference, Billie requested an addition to the standard second-degree murder jury instruction, which would have included an actual knowledge/subjective intent element to the standard instruction. The trial court denied the request and charged the jury with the standard instruction. The jury found Billie guilty on all counts, and he appeals his conviction.
II. STANDARD OF REVIEW
On appeal, Billie argues that the trial court erred by refusing to modify the standard jury instruction for second-degree murder. We review the denial of a criminal defendant's request to modify a standard jury instruction for abuse of discretion. Stephens v. State, 787 So.2d 747, 755 (Fla.2001). In order to be entitled to a special jury instruction, the defendant must prove: (1) the special instruction was supported by the evidence; (2) the standard instruction does not adequately cover the defendant's theory of the case; and (3) the proposed instruction accurately states the law and would not confuse or mislead the jury. Id. at 756. Although the defendant is entitled to have the jury instructed *840 on his theory of defense, a trial court's failure to grant a modification to a standard jury instruction "does not constitute error where the instructions given adequately address the applicable legal standards." Id. at 755; see also O'Brien v. State, 771 So.2d 563, 565 (Fla. 4th DCA 2000) ("If an instruction sufficiently sets forth the applicable legal standard, the refusal to give a special instruction is not error.")
III. ANALYSIS
The standard jury instruction for second-degree murder, approved by the Florida Supreme Court and read by the trial court to the jury, provides that to convict a defendant the jury must find that the defendant committed an act that was "imminently dangerous to another and demonstrating a depraved mind." As the trial court instructed the jury:
To the [sic] prove the crime of second degree murder the State must prove the following three elements beyond a reasonable doubt. One, Kurt Billie and/or Keith Billie is dead. Two, the death was caused by the criminal act of the defendant. Three, there was an unlawful killing of Kurt Billie and/or Keith Billie by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. An act includes a series of related acts arising from and performed pursuant to a single design or purpose. An act is imminently dangerous to another and demonstrating a depraved mind if it is an act or series of acts that a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another and is done from ill-will, hatred, spite or an evil intent and is of such a nature that the act itself indicates an indifference to human life. In order to convict of second degree murder it is not necessary for the State to prove the defendant had an intent to kill.
See Florida Standard Jury Instructions In Criminal Cases, The Supreme Court Comm. On Standard Jury Instructions, § 7.4 (May 2006).
Billie argues that the trial court erred by refusing to modify the standard second-degree murder jury instruction to include the following additional language:
To prove the defendant guilty of second-degree murder, the State must prove beyond a reasonable doubt that the defendant knew the children were in the Tahoe before he released it into the canal.
The standard jury instructions for criminal trials are presumed correct and are preferred over special instructions.[2]Stephens v. State, 787 So.2d 747, 755 (Fla. 2001); Carpenter v. State, 785 So.2d 1182, 1200 (Fla.2001); Kearse v. State, 662 So.2d 677, 682 (Fla.1995). Billie argues that the standard instruction was deficient given his defense in this case, i.e., that he did not know his children were in the Tahoe. He argues that the trial court therefore erred *841 as a matter of law in failing to give the requested instruction regarding his "subjective" knowledge of whether the children were in the Tahoe. We are not convinced by Billie's argument.
Every element of the crime of second-degree murder is included in the standard instruction.[3] Although Billie's requested instruction certainly supported his theory of the case in greater detail than the standard instruction, the standard instruction adequately covered Billie's theory of defense. The question of whether Billie knew his children were in the car was presented to the jury in great detail by both sides during trial. There can be no question that the jury understood that this was the central issue at trial, and we conclude that it was adequately captured by the standard instruction. For example, the standard instruction provides that the defendant's act be directed toward "another," i.e., the victim or victims, and, by requiring the act to demonstrate "a depraved mind without regard for human life," the instruction permits the jury to consider the particular circumstances and context of the defendant's charged conduct. Moreover, the degree to which a defendant must know that his actions are "reasonably certain to kill . . . another" was sufficiently conveyed by the standard instruction.[4]
We therefore conclude that the standard jury instruction adequately addressed the particular legal standard applicable to the facts of this case, and that the trial court did not commit error in denying Billie's requested special instruction. Indeed, we must conclude that the jury, having been adequately instructed on the law, rejected Billie's contention that he did not know that his children were in the Tahoe when he drove it into the canal and found that his actions satisfied the requirements for second-degree murder.
We decline to address the remaining issues raised on appeal as we conclude that they are without merit and/or would have *842 been harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Accordingly, we affirm the final judgment of conviction and sentence.
Affirmed.
NOTES
[1] Although Billie did not testify at this trial, the State read into evidence his testimony from the first trial.
[2] In Perriman v. State, 731 So.2d 1243, 1246 (Fla.1999), the Florida Supreme Court articulated the following rationale for formulating standard jury instructions in criminal cases:

The Florida Standard Jury Instructions in Criminal Cases were designed to eliminate  or minimize  juror confusion concerning the applicable law in criminal cases. The instructions were researched and formulated by a committee of experts and then reviewed by this Court in an effort to eliminate imprecision. The charges were designed above all to be accurate and clear-and thus to withstand appellate scrutiny. In contrast, an on-the-spot instruction formulated by a lone trial judge in the midst of a live proceeding has none of these safeguards and may prove lacking when placed under the microscope of appellate review.
[3] Second-degree murder is defined in section 782.04(2), Florida Statutes (1997) as:

The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree and constitutes a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084.
An act which is imminently dangerous to another and evincing a depraved mind has further been defined as an act "that (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, (2) is done from ill will, hatred, spite, or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life." Conyers v. State, 569 So.2d 1360, 1361 (Fla. 1st DCA 1990).
[4] To the extent Billie argues that second-degree murder requires him to have had a specific intent to kill his children when he drove the Tahoe into the canal, that argument has been consistently rejected by Florida courts. See, e.g., Dellinger v. State, 495 So.2d 197 (Fla. 5th DCA 1986) (affirming second-degree murder conviction based on accidental shooting where defendant believed gun was not loaded); Larsen v. State, 485 So.2d 1372 (Fla. 1st DCA 1986) (affirming second-degree murder conviction where husband slapped wife, causing her to hit her head on the ground and die). We therefore decline to depart from the clear wording of the standard jury instruction, despite Billie's reliance on law from other states that he claims requires a jury to find that an act was performed with the subjective knowledge of its danger to another person in order to sustain a conviction for second-degree murder. Because the standard jury instruction adequately conveys the law of Florida and is neither confusing nor misleading, Billie "cannot overcome the presumption of its correctness." Sloss v. State, 925 So.2d 419, 424 (Fla. 5th DCA 2006).