# Third District Court of Appeal
## State of Florida

Opinion filed January 28, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0047
Lower Tribunal No. F21-1581
_____


**Richard Fred Francois,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Carlos J. Martinez, Public Defender, and Shannon Hemmendinger, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Katryna Santa Cruz, Assistant Attorney General, for appellee.


Before LOGUE, GORDO and GOODEN, JJ.

LOGUE, J.

Richard Fred Francois appeals a final judgment of conviction and sentence for attempted first-degree murder and attempted second-degree murder. On appeal, Francois argues the State made inflammatory comments during closing arguments that: (1) denigrated the defense and (2) were improper "community conscience" arguments attempting to bolster the key witnesses. Finding no abuse of discretion, we affirm.

## Background

This appeal stems from a shooting incident near I-95 on December 31, 2020. The victims, Keren Jean-Baptiste and her brother, Elisha, were in their vehicle after departing a church service, when Francois approached and started shooting. Keren sustained gunshot wounds to her shoulder and knee. Elisha escaped without injury. Keren and Elisha identified the shooter as Francois. Francois was adjudicated guilty and sentenced to 30 years' imprisonment, followed by 10 years' probation.

The parties have a history. Keren and Francois were in a relationship for approximately nine years. The record reflects the relationship was tumultuous, toxic and, at times, violent. Keren ended the relationship in the middle of 2020. A few months before the incident, in September 2020, Keren sought, and obtained, a temporary restraining order following an incident where Francois dragged her out of a moving car.

2

In the months following the breakup, Francois sent Keren countless messages via text saying things such as, "you're going to remember me when I kill myself" and "I'm going to kill everyone [I've] ever had issues with." A month before the shooting, however, Francois ceased all communication with her. As noted above, both victims positively identified Francois as the shooter. Following a jury trial, Francois was convicted of attempted first-degree murder (Keren) and attempted second-degree murder (Elisha).

Francois moved for a new trial arguing, among other things, prosecutorial misconduct, which motion was denied. This appeal followed.

## Analysis

As noted above, the key issues on appeal relate to certain statements made by the State in its closing arguments. Specifically, Francois claims the prosecution made improper community conscience arguments and improperly denigrated the defense. Neither issue has merit.

"We review trial court rulings regarding the propriety of comments made during closing argument for an abuse of discretion. Where the comments were improper and the defense objected, but the trial court erroneously overruled defense counsel's objection, we apply the harmless error standard of review." Andres v. State, 254 So. 3d 283, 298-99 (Fla.

2018) (quoting <u>Cardona v. State</u>, 185 So. 3d 514 (Fla. 2016)) (internal citations omitted).

I. <u>Denigration of Defense and Defense Counsel</u>

Francois argues the State improperly (1) referred to Francois as a "monster" and (2) negatively discussed the defense theory.

"A prosecutor may not ridicule a defendant or his theory of defense[.]" <u>Riley v. State</u>, 560 So. 2d 279, 280 (Fla. 3d DCA 1990) (citing <u>Rosso v. State</u>, 505 So. 2d 611 (Fla. 3d DCA 1987)). That said, "[i]n order for the prosecutor's comments to merit a new trial, the comments must be of such a nature: (1) so as to deprive appellant of a fair trial; (2) materially contribute to his conviction; (3) be so harmful or fundamentally tainted so as to require a new trial; or (4) be so inflammatory that they might have influenced the jury to reach a more severe verdict than that which they would have reached otherwise." <u>Lopez v. State</u>, 555 So. 2d 1298, 1299 (Fla. 3d DCA 1990). "We do not review each of the allegedly improper comments in isolation; instead, we examine 'the entire closing argument' . . . in order to determine 'whether the cumulative effect' of any impropriety deprived [the defendant] of a fair trial." <u>Braddy v. State</u>, 111 So. 3d 810, 837 (Fla. 2012) (quoting <u>Card v. State</u>, 803 So. 2d 613, 622 (Fla. 2001)).

4

Generally, name calling or referring to a defendant with certain labels may be considered inflammatory. For example, repeatedly referring to appellant as a "pedophile" was determined to be an unacceptable prosecutorial tool in Rodriguez v. State, 210 So. 3d 750 (Fla. 5th DCA 2017). In contrast, on similar issues, the United States Supreme Court in Darden v. Wainwright, 477 U.S. 168, 180-182 (1986), held that a defendant was not deprived of a fair trial where the defendant was described as an "animal." The Court there reasoned that "[m]uch of the objectionable content was invited by[,] or was responsive to[,] the opening summation of the defense" and while the Court found these arguments improper, it concluded they did not infect the trial with unfairness considering the record as a whole. Id.

Here, the trial court overruled objections to the following statements during the State's closing:

> Taking the circumstances [sic], that is how we are able to prove this case. The[] creation of a **monster**. When the defense stated that [Keren] misidentified the defendant because in her mind that was who this man was[,] a **monster**. And given her fear, her anger, her frustration, her mind just automatically placed the . . . the defendant in the driver's seat.
>
> . . .
>
> **But yet the defense wants you to believe that [Keren] just had these monsters in her head that she made up**.

5

. . .

The **monster** in [Keren's] head. He is a **monster**.

(emphasis added). In isolation, the reference to Francois as a "monster" may, indeed, constitute an improper negative remark, like being called an "animal." However, the defense invited the use of the word "monster" in the first few lines of its opening argument. In other words, the defense, itself, introduced the word monster several times before the State made its closing argument.

For our purposes here, the victims' testimony and identification of Francois as the shooter, coupled with the other evidence presented by the prosecution, make it unlikely that the jury's decision was influenced by the handful of comments made during closing arguments. See Otero v. State, 754 So. 2d 765, 770 (Fla. 3d DCA 2000) (concluding improper statements to the jury were harmless error where the victim gave unwavering positive identification of defendant to the police). Further, nothing in the record suggests the comment was so inflammatory that it influenced the jury to reach a more severe verdict than that which they would have reached otherwise. The evidence submitted to the jury was sufficient to sustain the conviction.

Francois also takes issue with the following portion of the closing statement,

> Let"s first talk about this whole notion of a mistaken [identity] oh, this is mistaken identity. It is some random road rage incident. . . . They can choose to argue something whatever they want to argue. In this case, they are saying it is missing -- a mistaken ID.
>
> . . .
>
> But yet the defense wants you to believe that [Keren] just had these monsters in her head that she made up.

The comments here are analogous to those in Valentine v. State, 98 So. 3d 44, 55 (Fla. 2012), where the prosecutor said "Now, [defense counsel] wants you to believe that [Romero] is lying and to have you believe that she is lying, he has to provide you with a motivation for why she was lying and so her motivation is this Costa Rican divorce." The Supreme Court found this was not improper because it merely described the defense's theory of the case. Id. at 55-56.

Here, as in Valentine, the comment merely recites the defense's theory of a mistaken identity, without attacking or ridiculing the theory. In context, these comments do not rise to the level of denigrating the defense. Any error was harmless considering the record and evidence in the case.

7

II.    Community Conscience

Francois' community conscience arguments, likewise, fail. The statements at issue relate to the fact that: (1) Francois' actions, i.e., shooting at a vehicle on a populated freeway were reckless as a matter of public safety, and noting that (2) Keren and Elisha were members of the U.S. Military.

Generally, arguments appealing to community sensibilities and civic conscience have been held improper. See Birren v. State, 750 So. 2d 168, 169 (Fla. 3d DCA 2000). However, a comment that merely invokes the community but "[does] not suggest that the jury pick a side, condone the victim's [attempted] murder if returning a not guilty verdict, or convict [the defendant] for the good of the community," does not constitute an improper appeal to the jury's community sensibilities or conscience. Talley v. State, 260 So. 3d 562, 573 (Fla. 3d DCA 2019).

During its closing, the prosecution stated, "How reckless was it that they are on the freeway as a matter of public safety and concerned civilians the defense wants you to worry." While the comment references public safety, it was, in fact, an isolated and limited comment. See Smith v. State, 818 So. 2d 707, 711 (Fla 5th DCA 2002). Separately, the jury was presented evidence that eighteen bullets were found in the car, meaning Francois

8

pulled the trigger, at least, eighteen times while in neighborhood streets and public highways. Nothing in the comment directs the jury to pick a side, as the evidence spoke for itself. Talley, 260 So. 3d at 573.

Last, the State mentioned that both victims had "tried to move on" and had "joined the military" to "protect [our] citizens in this [country]." Francois relies on Spann v. State, 985 So. 2d 1059, 1067 (Fla. 2008), which states that "[i]mproper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." A reference in closing argument to military service, however, without more is not "independently reversible error," if it is not an improper attempt to sway the jury. Landry v. State, 620 So. 2d 1099, 1102 (Fla. 4th DCA 1993). Further, the topic of the victims' military service had already been discussed by both parties throughout the trial.

In sum, applying the law to the record in this case, the comments do not rise to a level that renders the trial unfair. We find no abuse of discretion.

Affirmed.